**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, SIERRA CLUB, FRIENDS OF THE EARTH U.S., WATERKEEPER ALLIANCE, INC., and MONTANA ENVIRONMENTAL INFORMATION CENTER,<br>Plaintiffs,<br><br>v.<br><br>U.S. ARMY CORPS OF ENGINEERS, and LIEUTENANT GENERAL WILLIAM H. GRAHAM, JR.,<br>Defendants,<br><br>and<br><br>NWP 12 COALITION,<br>Defendant-Intervenors,<br><br>and<br><br>STATES OF MONTANA, ALABAMA, ALASKA, ARKANSAS, FLORIDA, GEORGIA, IDAHO, INDIANA, IOWA, KANSAS, KENTUCKY, LOUISIANA, MISSOURI, NEBRASKA, NORTH DAKOTA, PENNSYLVANIA, SOUTH CAROLINA, TEXAS, WEST VIRGINIA, and WYOMING,<br>Movant-Defendant-Intervenors. | No. 1:26-cv-2571 |
| ALABAMA RIVERS ALLIANCE, BLACK WARRIOR RIVERKEEPER, HEALTHY GULF, OGEECHEE RIVERKEEPER, and SAVANNAL RIVERKEEPER,<br>Plaintiffs,<br><br>v.<br><br>U.S. ARMY CORPS OF ENGINEERS and LIEUTENANT GENERAL WILLIAM H. GRAHAM, JR.,<br>Defendants,<br><br>and<br><br>NWP 12 COALITION, Defendant-Intervenors,<br><br>and | No. 1:26-cv-2623 |

STATES OF MONTANA, ALABAMA, ALASKA, ARKANSAS, FLORIDA, GEORGIA, IDAHO, INDIANA, IOWA, KANSAS, KENTUCKY, LOUISIANA, MISSOURI, NEBRASKA, NORTH DAKOTA, PENNSYLVANIA, SOUTH CAROLINA, TEXAS, WEST VIRGINIA, and WYOMING,
Movant-Defendant-Intervenors.

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE BY THE STATES OF MONTANA, ALABAMA, ALASKA, ARKANSAS, FLORIDA, GEORGIA, IDAHO, INDIANA, IOWA, KANSAS, KENTUCKY, LOUISIANA, MISSOURI, NEBRASKA, NORTH DAKOTA, PENNSYLVANIA, SOUTH CAROLINA, TEXAS, WEST VIRGINIA, and WYOMING**

## INTRODUCTION

These cases are challenges to Nationwide Permit 12 ("NWP 12"), as reissued by the U.S. Army Corps of Engineers ("Corps"). *See* 91 Fed. Reg. 768 (Jan. 8, 2026). Like prior iterations of that permit, the 2026 NWP 12 authorizes minor, and typically temporary, discharges "associated with oil or natural gas pipeline activities," provided that certain conditions are met. *Id.* at 786. Plaintiffs Center for Biological Diversity *et al*. ("CBD") and Alabama Rivers Alliance *et al.* ("Alabama Rivers") attack the Corps' reissuance of NWP 12, claiming that the Corps failed to comply with the Endangered Species Act ("ESA"), Clean Water Act ("CWA"), Administrative Procedure Act ("APA"), and National Environmental Policy Act ("NEPA"). Plaintiffs ask this Court to declare NWP 12 to be in violation of the CWA, ESA, NEPA, and APA, and to vacate the permit in whole or in part.

Plaintiffs' request contravenes the Corps' statutory obligations and threatens the infrastructure, economy, and sovereignty of proposed intervenors Montana, Alabama, Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Missouri, Nebraska, North Dakota, Pennsylvania, South Carolina, Texas, West Virginia, and Wyoming ("Intervenor States"). Without NWP 12, the development and maintenance of oil and natural gas pipe lines will grind to a halt. That may advance Plaintiffs' objectives, but it dramatically

undermines Congress's goal of expediting certain construction projects and minimizing burdensome regulations. See 33 C.F.R. § 330.1(b); *Snoqualmie Valley Pres. Alliance v. U.S. Army Corps of Eng'rs*, 683 F.3d 1155, 1164 (9th Cir. 2012). If Plaintiffs prevail, Intervenor States' interests would be severely impaired.

Intervenor States accordingly move to intervene in both related cases challenging NWP 12, Fed. R. Civ. P. 24(a), (b), and they further request relief from the obligation to file a responsive pleading. *See* Fed. R. Civ. P. 24(c); L.R. 7(j). Plaintiffs and Intervenor-Defendants NWP 12 Coalition do not oppose this motion, and Defendants take no position.

## PROCEDURAL POSTURE

Following the latest re-issuance of NWP 12, CBD filed suit on July 22, 2026. Compl. (ECF 1), No. 1:26-cv-2571 (D.D.C.). Alabama Rivers filed suit five days later, on July 27, 2026. Compl. (ECF 1), No. 1:26-cv-2623 (D.D.C.). A coalition of oil and gas industry interests was granted intervention in both cases. *See* Order (ECF 15), No. 1:26-cv-2571. The Defendants answered on October 16, 2026, and the existing intervenors adopted that answer on the same day. The deadline for Defendants to file a certified list of the contents of the administrative record is November 16, 2026.

## ARGUMENT

### I. Intervenor States should be granted intervention as of right.

"On [1] timely motion, the court *must* permit anyone to intervene who … [2] claims an interest relating to the property or transaction that is the subject of the action, and [3] is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, [4] unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2) (emphasis added); *see also Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) ("A

district court must grant a timely motion to intervene that seeks to protect an interest that might be impaired by the action and that is not adequately represented by the parties.”).

Additionally, “intervenors seeking relief broader than or different from that sought by existing parties must possess constitutional standing, but intervenors that seek the same relief sought by at least one existing party need not do so.” *Institutional Shareholder Servs. v. SEC*, 142 F. 4th 757, 764 n.3 (D.C. Cir. 2025) (citing *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017), and *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020)). In determining whether intervention is appropriate, courts are “guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention.” *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010) (cleaned up).

**A. This motion is timely.**

The timeliness of a motion to intervene “is to be determined from all the circumstances.” *NAACP v. New York*, 413 U.S. 345, 366 (1973). A court considers factors such as (1) the time elapsed since the inception of the suit, (2) the purpose for which intervention is sought, (3) the necessity for intervention as a means of preserving the applicant’s rights, and (4) the probability of prejudice to those already parties in the case. *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980). “The most important consideration in deciding whether a motion for intervention is [timely] is whether the delay in moving for intervention will prejudice the existing parties to the case.” *Roane*, 741 F.3d at 151 (quoting 7C Charles Alan Wright et al., Federal Practice and Procedure § 1916, at 541 (3d ed. 2007)).

Applying those factors, this motion is timely. After learning of these cases challenging NWP 12, the Intervenor States put together a coalition of interested States and retained outside

counsel. They are now moving for intervention only three months after the suit was filed and long before the administrative record is due. Accordingly, the action will not be delayed by intervention, and no party will be unfairly prejudiced. Further, if granted intervention, the Intervenor States are prepared to comply with any established scheduling deadlines negotiated by the parties or imposed by the Court, as well as the "conference" requirement in the Court's order granting the NWP 12 Coalition's motion to intervene.

**B. Intervenor States have a protectable interest and Article III standing.**

There is generally sufficient interest—and injury in fact for Article III purposes—where a proposed intervenor "benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the [proposed intervenor's] benefit." *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 317 (D.C. Cir. 2015). That is the case here.

**1.** Pipeline transport is the safest, cleanest, and cheapest method of transporting oil and gas.[1] Indeed, per barrel, pipeline transport is only 1/3 to 1/2 the cost of railroad transport.[2] As both producers and consumers of oil and natural gas, Intervenor States have an economic interest in minimizing transportation costs by transporting oil and natural gas through pipelines.

As the Industry Coalition's declarations recount, those pipelines almost invariably cross waters of the United States. Parr Decl. (ECF 19-1) ¶ 5; Rorick Decl. (ECF 19-2) ¶ 5; Black Decl. (ECF 19-4) ¶ 7. The oil and gas industry thus relies heavily on NWP 12 to construct and maintain pipelines. Dreskin Decl. (ECF 19-3) ¶¶ 11-15; Black Decl. (ECF 19-4) ¶¶ 7. If Plaintiffs were to prevail, construction and maintenance would be significantly delayed. Parr Decl. (ECF 19-1) ¶¶ 20-26; Rorick Decl. (ECF 19-2) ¶¶ 6-9, 14-17; Dreskin Decl. (ECF 19-3) ¶¶ 19-22; Black Decl. (ECF 19-4) ¶¶ 14-17. Plaintiffs admit essentially all of that. *See* Compl. (ECF 1) ¶¶ 29-34, 37, 40,

[1] https://primis.phmsa.dot.gov/stakeholder-comms/safetystandards/
[2] https://crsreports.congress.gov/product/pdf/R/R43390

42, 44, 47, 58, 60, No. 1:26-cv-2571 (D.D.C.); Compl. (ECF 1) ¶¶ 10, 12, No. 1:26-cv-2623 (D.D.C). The result would be significant adverse economic impacts to Intervenor States.

Take Montana. It produces approximately 70 thousand barrels of crude oil per day and 4,000 million cubic feet of natural gas per month, all of which needs to be safely and efficiently transported.[3] If NWP 12 were eliminated, pipeline construction and maintenance costs would increase, and pipeline availability would decrease. Montana and its citizens would incur increased transportation costs through the lack of pipeline access.

**2.** Intervenor States have a direct pecuniary interest in continued oil and gas development. Again, take Montana. The State's royalties on the production of oil and gas located on State trust lands is dependent on the fair market value of those products. Mont. Code Ann. § 77-3-432. Especially relevant here, the State "may share the expense of transporting the oil to the nearest market on a basis proportional to the state's royalty interest in the oil and at a rate per mile acceptable to the [Department of Natural Resources and Conservation]." *Id*. So Montana's actual royalties depend on successful development and maintenance of oil and natural gas pipelines, which, in turn, depend on NWP 12. And in addition to royalties from state-owned own oil and gas resources, federal law provides for revenue sharing from oil and gas development on federal lands and sea bottoms. *See* 43 U.S.C. §§ 1331 note, 1337(g), 1608. That revenue sharing, too, depends on successful development and maintenance of oil and natural gas pipelines, which, in turn, depend on NWP 12.

The dollars are real. For FY2025, the U.S. Department of the Interior distributed $27.02 million in revenue sharing to Montana alone from energy development on federal lands.[4] And just last month, Montana Governor Greg Gianforte announced an oil and gas lease sale on state trust

---

[3] https://www.eia.gov/states/MT/data/dashboard/supply-disposition
[4] https://www.doi.gov/pressreleases/interior-announces-1461-billion-fiscal-year-2025-energy-revenue

lands totaling more than $2.1 million in revenue, with those funds to be used for public education.[5] The continued viability of those revenue streams depends on cost-effective access to well-maintained pipelines. Regulatory challenges that are likely to cause negative impacts to revenue—whether commercial or sovereign—satisfy both the protectable interest requirement and Article III standing. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733-737 (D.C. Cir. 2003) (holding that Mongolia had right to intervene to defend non-regulation of hunting trophies where regulation would decrease revenue from sportsmen); *Military Toxics Project v. EPA*, 146 F.3d 948, 953-954 (D.C. Cir. 1998) (holding that manufacturers of munitions had standing to intervene to defend lower regulatory burden for expended munitions); *see also WildEarth Guardians v. Jewell*, 320 F.R.D. 1, 3-4 (D.D.C. 2017) (holding that States have a protectable economic interest in federal oil and gas leasing); *WildEarth Guardians v. BLM*, 2012 U.S. Dist. LEXIS 192328, at *4 (D.D.C. June 7, 2012) (granting intervention: "Wyoming has an economic interest in the development of coal mining operations in the state.").

**3.** Intervenor States also have a critical interest in protecting their infrastructure and ensuring that infrastructure is well-maintained. Relatedly, Intervenor States have a protectable interest in preventing energy shortages and eliminating regulatory impediments to building and maintaining these safe and clean pipelines pursuant to NWP 12. *Alfred L. Snapp & Son v. P.R.*, 458 U.S. 592, 607 (1982) ("[A] State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general."); *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) ("[T]he State has an interest in maintaining the agricultural industry in central Texas and in representing the 1.5 million users of the Aquifer.").

---

[5] https://dnrc.mt.gov/News/dnrc-news/news-article34

That interest extends beyond just oil and gas. The development and maintenance of pipelines impacts Intervenor States' electric grids, too. As the President and CEO of the North American Electric Reliability Corporation explained to Congress, "Additional pipeline infrastructure (including gas storage) is needed to reliably serve load and enable natural gas as a balancing resource."[6] The threat to our energy independence, resiliency, reliability, and affordability find at least one primary culprit in suits like this. Plaintiffs' arguments, if accepted, would only worsen existing problems. The Intervenor States have an interest in protecting the safety and reliability of the gas and electric supply for their citizens.

**4.** Beyond their pecuniary and infrastructural interests, Intervenor States have an interest in protecting their regulatory authority. *See, e.g.,* Mont. Code Ann. §§ 75-20-102(4), 104(9)(b) (asserting jurisdiction over pipeline facilities through the Major Facility Siting Act). At the same time, they also have an interest in not being over-burdened with requests for CWA 401 certifications. *See* 33 U.S.C. § 1341. If Plaintiffs succeed and NWP 12 is not available, activities with little or no impact to water quality will nevertheless require full-blown CWA permits and underlying CWA 401 certifications, at tremendous cost to the States. *See id.* The Intervenor States have a protectable interest in regulatory changes—like the one sought by Plaintiffs—that affect their own authority. *See, e.g., Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (finding Texas had an interest in defending federal administrative decision-making affecting the State's statutory authority to regulate pumping of an aquifer); *California v. Bureau of Land Mgmt.*, 2018 U.S. Dist. LEXIS 74632 (N.D. Cal. May 2, 2018) (finding Wyoming had an interest in defending federal administrative decision-making affecting the State's "regulatory program governing hydraulic fracturing").

---

[6] https://www.energy.senate.gov/wp-content/uploads/meetings/F388F27C-E090-4214-B82E-A48549ABBB0B/Robb%20Testimony%203-11-21%20SENR%20Cmte%20Hrg.pdf

### C. Intervenor States' interests will be impaired if Plaintiffs are granted relief.

Looking to "the practical consequences of denying intervention," *Fund for Animals*, 322 F.3d at 735, the interests identified above will be seriously impaired if the Court grants any part of Plaintiffs' requested relief. Intervenor States would quickly be bombarded with requests for CWA 401 certifications; pipeline construction and maintenance would slow to a crawl; development of new oil and gas resources (and the attendant royalties) would plummet; and the safety and reliability of the pipeline system would increasingly erode. Yet again, Plaintiffs concede the key issue: "If Nationwide Permit 12 were not available, the Corps could [only] authorize pipeline projects using individual CWA permits." Compl. (ECF 1) ¶ 22, No. 1:26-cv-2623 (D.D.C.). The bottom line is that Intervenor States rely on and benefit from NWP 12.

### D. Intervenor States' interests are not adequately represented.

To support intervention, an intervenor need only make a "minimal" showing "that representation of his interest *may* be inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *see also Fund for Animals*, 322 F.3d at 735 (describing the inadequacy of representation requirement as "not onerous."). Indeed, a proposed intervenor "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee." *Am. Tel. & Tel. Co.*, 642 F.2d at 1293.

The D.C. Circuit has recognized that federal agencies do not adequately represent the interests of other sovereigns, whose interests may be more "narrow and parochial." *Fund for Animals*, 322 F.3d at 737; *see also Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) ("The Forest Service is required to represent a broader view than the more narrow, parochial interests of the State of Arizona…."). "While the Federal Defendants' duty runs to the interests of the American people as a whole, the state-intervenors will primarily consider the

interests of their own citizens." *WildEarth Guardians*, 320 F.R.D. at 4. "Furthermore, [States] may have unique sovereign interests not shared by the federal government." *Id.*

All of that is certainly true here, where Intervenor States have different views on energy development than the federal government, and also have a fundamental and long-standing disagreement with the federal government over the scope of waters of the United States and the proper scope of the Clean Water Act. *See, e.g.*, Cert-Stage Br. of Amici Curiae State of West Viriginia and 20 Other States, *Sackett v. United States*, No. 21-454 (U.S.); Merits Br. of Amici Curiae State of West Virginia and 25 Other States, No. 21-454 (U.S.). Intervenor States should accordingly be granted intervention as of right under Rule 24(a).

## II. Alternatively, Intervenor States should be permitted to intervene under Rule 24(b).

If the Court denies Intervenor States' request to intervene as of right, the States request, in the alternative, to intervene permissively under Rule 24(b). The Court may permit intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Court has broad discretion to grant permissive intervention, and the D.C. Circuit gives the rule a "generous" interpretation. *See EEOC v. Nat'l Childs. Ctr., Inc.,* 146 F.3d 1042, 1045 (D.C. Cir. 1998). In determining whether to grant permissive intervention, courts must consider whether the proposed intervention would "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b); *see also Arizona v. California*, 460 U.S. 605, 615 (1983), *decision supplemented*, 466 U.S. 144 (1984) (granting intervention based on the absence of any showing that the rights of the original parties would be prejudiced or the litigation unduly delayed).

Permissive intervention is warranted here. Plaintiffs seek to have NWP 12 declared unlawful and vacated. The defenses the Intervenor States would assert would be based on the

administrative record to be filed by the Federal Defendants, present questions of law and fact in common with the underlying suit and respond directly to Plaintiffs' claims. This motion is timely and not prejudicial for the reasons argued above. And the unique perspective of Intervenor States—as co-equal sovereigns in our federal system—will aid the Court in evaluating NWP 12.

## CONCLUSION

For the foregoing reasons, Intervenor States should be GRANTED intervention in both the *CBD* and *Alabama Rivers* cases. A proposed answer is attached.

Dated: October 22, 2026

Respectfully submitted,

AUSTIN KNUDSEN
MONTANA ATTORNEY GENERAL

/S/ *Christian B. Corrigan*
CHRISTIAN B. CORRIGAN
*Montana Solicitor General*
MONTANA DEPT. OF JUSTICE
215 N. Sanders Street
Helena, MT 59601
Email: christian.corrigan@mt.gov
Tel: (406) 444-2026

JOSEPH S. ST. JOHN*
ST. JOHN LLC
1701 Jefferson Ave.
New Orleans, LA 70115
Email: scott@stjohnlaw.com
Tel: (410) 212-3475
* *pro hac vice forthcoming*

*Counsel for State of Montana*

STEVE MARSHALL
ALABAMA ATTORNEY GENERAL

/s/ *A. Barrett Bowdre*
A. BARRETT BOWDRE
*Solicitor General*
STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Ave.
Montgomery, AL 36130
Tel: (334) 242-7300
Email: Barrett.Bowdre@AlabamaAG.gov

*Counsel for State of Alabama*

CORI MILLS
ACTING ALASKA ATTORNEY GENERAL

/s/ *Jessica M. Alloway*
JESSICA M. ALLOWAY
*Acting Alaska Solicitor General*

/s/ *Thomas Mooney-Myers*
THOMAS MOONEY-MYERS
*Assistant Attorney General*
ALASKA DEPARTMENT OF LAW
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Email: jessie.alloway@alaska.gov
Email: thomas.mooney-myers@alaska.gov

*Counsel for State of Alaska*

TIM GRIFFIN
ARKANSAS ATTORNEY GENERAL

/s/ Joseph Nelson
JOSEPH NELSON
*Senior Assistant Solicitor General*
AUTUMN HAMIT PATTERSON
*Solicitor General*
OFFICE OF THE ARKANSAS
ATTORNEY GENERAL
101 West Capitol Avenue
Little Rock, AR 72201
Tel: (501) 301-0259
Email: joseph.nelson@arkansasag.gov
Email: autumn.patterson@arkansasag.gov

*Counsel for State of Arkansas*

JAMES UTHMEIER
FLORIDA ATTORNEY GENERAL

/s/ *David M.S. Dewhirst*
DAVID M.S. DEWHIRST (FBN 1076928)
*Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
PL-01, The Capitol
Tallahassee, Florida 32399
Tel: (850) 414-3300
Email: david.dewhirst@myfloridalegal.com

*Counsel for State of Florida*

CHRISTOPHER M. CARR
GEORGIA ATTORNEY GENERAL

/s/ *John Henry Thompson*
JOHN HENRY THOMPSON
*Solicitor General*
OFFICE OF THE GEORGIA
ATTORNEY GENERAL
40 Capitol Square, SW
Atlanta, Georgia 30334
Tel: (404) 458-3373
Email: jhthompson@law.ga.gov

*Counsel for State of Georgia*

RAUL R. LABRADOR
IDAHO ATTORNEY GENERAL

/s/ *Michael A. Zarian*
MICHAEL A. ZARIAN
*Solicitor General*
OFFICE OF THE IDAHO ATTORNEY GENERAL
700 W. Jefferson St., Suite 210
Boise, Idaho 83720
Tel: (208) 334-2400
Email: michael.zarian@ag.idaho.gov

*Counsel for State of Idaho*

THEODORE E. ROKITA
INDIANA ATTORNEY GENERAL

/s/ *James A. Barta*
JAMES A. BARTA
*Solicitor General*
OFFICE OF THE INDIANA
ATTORNEY GENERAL
302 W. Washington Street
IGC South, Fifth Floor
Indianapolis, IN 46204-2770
Tel: (317) 232-0709
Fax: (317) 232-7979
Email: James.Barta@atg.in.gov

*Counsel for State of Indiana*

/s/ *Eric Wessan*
ERIC WESSAN
*Solicitor General*
OFFICE OF IOWA ATTORNEY GENERAL
BRENNA BIRD
1305 E. Walnut St.
Des Moines, IA 50319
Tel: (515) 823-9117

*Counsel for State of Iowa*

KRIS W. KOBACH
KANSAS ATTORNEY GENERAL

/s/ *James Rodriguez*
JAMES RODRIGUEZ
*Deputy Attorney General*
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612
Tel: (785) 368-8197
Email: Jay.Rodriguez@ag.ks.gov

*Counsel for State of Kansas*

RUSSELL COLEMAN
KENTUCKY ATTORNEY GENERAL

/s/ *Jason P. Woodall*
JASON P. WOODALL
OFFICE OF THE ATTORNEY GENERAL
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Tel: (502) 696-5300
Email: Jason.Woodall@ky.gov

*Counsel for the Commonwealth of Kentucky*

ELIZABETH B. MURRILL
LOUISIANA ATTORNEY GENERAL

/s/ *Kelsey L. Smith*
J. BENJAMIN AGUINAGA
*Solicitor General*
KELSEY L. SMITH
*Deputy Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
Tel: (225) 428-7432
Email: SmithKel@ag.louisiana.gov

*Counsel for State of Louisiana*

*/s/ Louis J. Capozzi III*
LOUIS J. CAPOZZI III
*Solicitor General*
MISSOURI ATTORNEY GENERAL'S OFFICE
207 West High St.
Jefferson City, MO 65101
Tel: 573-645-9662
Louis.Capozzi@ago.mo.gov

*Counsel for State of Missouri*

MICHAEL T. HILGERS
NEBRASKA ATTORNEY GENERAL

/s/ *Cody S. Barnett*
CODY S. BARNETT
*Solicitor General*
NEBRASKA DEPARTMENT OF JUSTICE
2115 State Capitol
Lincoln, Nebraska 68509
Tel: (402) 471-2683
Fax: (402) 471-3297
cody.barnett@nebraska.gov

*Counsel for State of Nebraska*

DREW H. WRIGLEY
NORTH DAKOTA ATTORNEY GENERAL

/s/ *Philip Axt*
PHILIP AXT
*Solicitor General*
600 E. Boulevard Ave., Dept. 125
Bismarck ND 58505
Phone: (701) 328-2210
Email: pjaxt@nd.gov

*Counsel for State of North Dakota*

/s/ *Jacob Frasch*
*Deputy Attorney General*
*Civil Litigation*
PENNSYLVANIA OFFICE OF
ATTORNEY GENERAL
Strawberry Square
Harrisburg, PA 17120
(717) 580-7897

*Counsel for Commonwealth of Pennsylvania*

/s/ *J. Emory Smith, Jr.*
*General Counsel*
OFFICE OF THE SOUTH CAROLINA
ATTORNEY GENERAL
Office 803-734-3642
P.O. Box 11549
Columbia, SC 29211
Email: esmith@scag.gov

*Counsel for State of South Carolina*

KEN PAXTON
TEXAS ATTORNEY GENERAL

BRENT WEBSTER
FIRST ASSISTANT ATTORNEY GENERAL

RALPH MOLINA
DEPUTY FIRST ASSISTANT
ATTORNEY GENERAL

WILLIAM D. WASSDORF
DEPUTY ATTORNEY GENERAL
FOR CIVIL LITIGATION

KELLIE E. BILLINGS-RAY
CHIEF, ENVIRONMENTAL
PROTECTION DIVISION

/s/ *Ian Lancaster*
IAN LANCASTER
*Assistant Attorney General*
Ian.Lancaster@oag.texas.gov
OFFICE OF THE ATTORNEY GENERAL
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

*Counsel for State of Texas*

/s/ *Michael R. Williams*
MICHAEL R. WILLIAMS
*Solicitor General*
OFFICE OF THE WEST VIRGINIA
ATTORNEY GENERAL
State Capitol Complex, Bldg. 1, Rm E-26
1900 Kanawha Blvd. E
Charleston, WV 25305
Tel: (681) 313-4511 Email
michael.r.williams@wvago.gov

*Counsel for State of West Virginia*

/s/ *D. David DeWald*
D. DAVID DEWALD
*Deputy Attorney General*
OFFICE OF THE ATTORNEY GENERAL
OF WYOMING
109 State Capitol
Cheyenne, WY 82002
Tel: (307) 777-7895
Email: david.dewald@wyo.gov

*Counsel for State of Wyoming*