**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. ARMY CORPS OF ENGINEERS, *et al.*,<br><br>Defendants. | Civil Action No. 26-cv-2571 (CKK) |
| ALABAMA RIVERS ALLIANCE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. ARMY CORPS OF ENGINEERS, *et al.*,<br><br>Defendants. | Civil Action No. 26-cv-2623 (CKK) |

**MEMORANDUM OPINION**
(November 12, 2026)

Plaintiffs, several organizations dedicated to protecting the environment, bring these two related actions against the United States Army Corps of Engineers ("the Corps") and Lieutenant General William H. Graham, Jr., alleging that the Corps' reissuance of Nationwide Permit 12, a general permit that governs discharges related to oil and natural gas pipelines, violates the Clean Water Act, Endangered Species Act, National Environmental Policy Act, and Administrative Procedure Act. On September 16, 2026, the Court granted a Motion to Intervene as Defendants-Intervenors in each case by a group of industry trade associations: the American Gas Association,

American Petroleum Institute, Interstate Natural Gas Association of America, and Liquid Energy Pipeline Association (collectively, the "NWP 12 Coalition").

Presently before the Court are two motions to intervene by additional parties seeking to intervene as Defendants in each related case.[1] *First*, a group of energy companies—Kinder Morgan, Inc.; Tennessee Gas Pipeline Company, L.L.C.; Southern Natural Gas Company, L.L.C.; and Elba Express Company, L.L.C. (collectively, "KMI")—seek to intervene as of right in accordance with Federal Rule of Civil Procedure 24(a), or in the alternative, to permissively intervene in accordance with Rule 24(b). The NWP 12 Coalition does not oppose the motion to intervene, and the Federal Defendants take no position on the motion. Plaintiffs oppose KMI's motion to intervene as of right on the grounds that KMI's interests in these cases are already adequately represented by the trade associations that comprise the NWP 12 Coalition. In their opposition to KMI's motion to intervene, Plaintiffs emphasize that KMI's companies are members of some of the NWP 12 Coalition trade associations. However, Plaintiffs do not oppose KMI's motion to permissively intervene.

*Second*, a group of states—Montana, Alabama, Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Missouri, Nebraska, North Dakota, Pennsylvania, South Carolina, Texas, West Virginia, and Wyoming ("the Intervenor States")—also seek to intervene as of right as Defendants in each related case, or, in the alternative, to permissively intervene. The Federal Defendants take no position on the motion to intervene, and the NWP 12 Coalition does not oppose the motion. Plaintiffs also do not oppose the Intervenor States' motion,

---

[1] These two related cases, which have not been consolidated, raise identical legal issues, and the Movant-Intervenors submitted identical motions to intervene in each case, listing both case names in the caption and addressing Plaintiffs' arguments together. Accordingly, the Court will consider these motions to intervene together and will issue one Opinion. *See, e.g.*, *Blackman v. District of Columbia*, 328 F. Supp. 2d 36, 37 n.1 (D.D.C. 2004) (PLF) ("The Court will consider these motions together because the briefs submitted by the parties are substantively identical.").

though Plaintiffs condition their non-opposition on the Intervenor States' complying with certain requirements that the Court imposed on the NWP 12 Coalition's intervention.

Upon consideration of the parties' submissions,[2] the relevant legal authority, and the entire record, the Court shall **DENY** KMI's motion to intervene as of right, but shall **GRANT** KMI's motion to permissively intervene. The Court shall **GRANT** the Intervenor States' motion to intervene as of right. The Court shall **CONDITION** both groups' intervention on several requirements described herein.

## I. BACKGROUND

Congress enacted the Clean Water Act in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To that end, the Clean Water Act requires any party seeking to construct a project that will "discharge . . . dredged or fill material" into waters of the United States to obtain a permit. 33 U.S.C. §§ 1311, 1344.

The U.S. Army Corps of Engineers ("the Corps") oversees the permitting process. The Corps issues two types of permits: individual and general permits. Complaint, Alabama Rivers

[2] The Court's consideration has focused on the following documents, including the attachments and exhibits thereto:

- Motion to Intervene of Kinder Morgan, Inc.; Tennessee Gas Pipeline Company, L.L.C.; Southern Natural Gas Company, L.L.C.; and Elba Express Company, L.L.C. ("KMI Mot."), Dkt. No. 25, Case No. 26-2571; Dkt. No. 28, Case No. 26-2623.
- Motion to Intervene by the States of Montana, Alabama, Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Missouri, Nebraska, North Dakota, Pennsylvania, South Carolina, Texas, West Virginia, and Wyoming ("Intervenor States' Mot."), Dkt. No. 29, Case No. 26-2571; Dkt. No. 35, Case No. 26-2623.
- Plaintiffs' Response to Kinder Morgan, Inc.; Tennessee Gas Pipeline Company, L.L.C.; Southern Natural Gas Company, L.L.C.; and Elba Express Company, L.L.C.'s Motion to Intervene ("CBD Opp'n"), Dkt. No. 31, Case No. 26-2571.
- Response in Partial Opposition to Motion to Intervene ("Ala. Riv. Opp'n"), Dkt. No. 34, Case No. 26-2623.
- Proposed Intervenor-Defendants Kinder Morgan, Inc.; Tennessee Gas Pipeline Company, L.L.C.; Southern Natural Gas Company, L.L.C.; and Elba Express Company, L.L.C.'s Reply in Support of Motion to Intervene ("KMI Reply"), Dkt. No. 34, Case No. 26-2571; Dkt. No. 39, Case No. 26-2623.

In an exercise of its discretion, the Court concludes that oral argument is not necessary to the resolution of the issues pending before the Court. *See* LCvR 7(f).

Alliance, *et al.* ("Ala. Riv. Compl.") ¶ 2, Dkt. No. 1, Case No. 26-cv-2623. The Corps issues individual permits on a case-by-case basis. *Id.* The Corps issues general permits to streamline the permitting process for certain general categories of activities. *Id.*; 33 U.S.C. § 1344(e). The Corps issues general permits for categories of discharges that are "similar in nature, will cause only minimal adverse environmental effects when performed separately, and will have only minimal cumulative adverse effect on the environment." 33 U.S.C. § 1344(e)(1).

Plaintiffs challenge the Corps' decision to reissue Nationwide Permit 12, a general permit that authorizes discharges of dredged or fill material into waters of the United States as "required for the construction, maintenance, repair, and removal of oil and natural gas pipelines and associated facilities in waters of the United States, provided the activity does not result in the loss of greater than 1/2-acre of waters of the United States for each single and complete project." Ala. Riv. Compl. ¶ 131 (quoting Reissuance and Modification of Nationwide Permits, 91 Fed. Reg. 768, 859 (Jan. 8, 2026)). Plaintiffs explain that for "linear projects," such as pipelines that cross several waterbodies, Nationwide Permit 12 defines each "separate and distinct" waterbody crossing as a "single and complete project." *Id.* ¶ 132; *see also* Complaint, Center for Biological Diversity, *et al.* ("CBD Compl.") ¶ 131, Dkt. No. 1, Case No. 26-cv-2571. Accordingly, Plaintiffs argue that "so long as no more than a half-acre of jurisdictional waters are permanently 'lost' at each crossing," Nationwide Permit 12 enables the Corps to "authorize thousands of waterbody crossings—and consequently hundreds of acres of permanent and temporary impacts—at a single time for a single pipeline." Ala. Riv. Compl. ¶ 167; *see also* CBD Compl. ¶ 12, 131, 132.

In Plaintiffs' view, the Corps' reissuance of Nationwide Permit 12 "was arbitrary, capricious, and not in accordance with law, in violation of the Clean Water Act, Endangered Species Act, National Environmental Policy Act, and Administrative Procedure Act." Ala. Riv.

Compl. ¶ 1; *see also* CBD Compl. ¶ 1. Accordingly, Plaintiffs seek the "vacatur of Nationwide Permit 12 as a whole." Ala. Riv. Opp'n at 4; *see also* Ala. Riv. Compl. ¶ 1; CBD Compl. ¶ 16.

**A. Motion to Intervene by the NWP Coalition**

After Plaintiffs filed their Complaints, four industry trade associations—the American Gas Association, American Petroleum Institute, Interstate Natural Gas Association of America, and Liquid Energy Pipeline Association (the "NWP 12 Coalition")—filed a motion to intervene as of right. Plaintiffs did not oppose the motion.

On September 16, 2026, the Court granted the unopposed motion. Order, Dkt. No. 15, Case No. 26-2571. As the Court explained, the "NWP 12 Coalition has cognizable interests that may be impaired or impeded by this litigation, given their members' reliance on Nationwide Permit 12 . . . for the authorization of discharges relating to oil and natural gas facilities." *Id.* at 2. Moreover, the Court explained that the "NWP 12 Coalition's interests are not adequately represented by the existing parties, given that the Government represents the broader public interest, while the NWP 12 Coalition seeks to protect the narrower interests of the energy industry." *Id.*; *see id.* (quoting *Nat. Res. Def Council v. Castle*, 561 F.2d 904, 912 (D.C. Cir. 1977) ("[T]he appellants' interest is more narrow and focused than [the government's], being concerned primarily with the regulation that affects their industries.")).

While the Court granted the motion to intervene, the Court required counsel for the NWP 12 Coalition to "CONFER with counsel for Defendants before filing any motion, responsive filing, or brief to determine whether their positions may be set forth in a consolidated manner." *Id.* at 2. The Court further ordered that any separate filings from the NWP 12 Coalition "must include a Certificate of Compliance with the conference requirement and a statement that the issues raised by Intervenors are not adequately covered by Defendants' position." *Id.*

**B. KMI Motion to Intervene**

On October 16, 2026, KMI filed its Motion to Intervene. KMI includes Kinder Morgan, Inc., which represents that it operates the "largest natural gas network in North America" and "routinely relies on NWP 12 to complete construction, maintenance, and other activities on its existing pipeline systems and to construct new pipeline infrastructure." KMI Mot. at 3, 6. KMI also includes Kinder Morgan's wholly owned subsidiaries, Tennessee Gas Pipeline, LLC ("Tennessee Gas") and Elba Express Company, LLC ("Elba"), as well as Kinder Morgan's affiliate, Southern Natural Gas Company, LLC ("Southern Natural"). Tennessee Gas is currently developing a pipeline, "the Mississippi Crossing Pipeline," that relies on Nationwide Permit 12, and Elba and Southern Natural have a pending application before the Corps to use Nationwide Permit 12 for its pipeline, called the "South System Expansion IV." *Id.* at 3, 4, 6.

Kinder Morgan is a member of three of the four trade associations that comprise the NWP 12 Coalition: the American Petroleum Institute, Interstate Natural Gas Association of America, and Liquid Energy Pipeline Association. Def.'s Mot. at 9 n.4. Tennessee Gas and Southern Natural are both members of the American Gas Association, the fourth association within the NWP 12 Coalition. Ala. Riv. Opp'n at 1. Southern Natural is also a member of the Interstate Natural Gas Association of America. *Id.* at 3-4.

**C. Intervenor States' Motion to Intervene**

On October 22, 2026, the Intervenor States—Montana, Alabama, Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Missouri, Nebraska, North Dakota, Pennsylvania, South Carolina, Texas, West Virginia, and Wyoming—filed a Motion to Intervene. The Intervenor States argue that Plaintiffs' requested vacatur of Nationwide Permit 12 "threatens the infrastructure, economy, and sovereignty" of each state, and without Nationwide

Permit 12, "the development and maintenance of oil and natural gas pipelines will grind to a halt." Intervenor States Mot. at 2.

## II. LEGAL STANDARD

### A. Intervention as of Right

Federal Rule of Civil Procedure 24(a) governs intervention as a matter of right. That provision requires the Court "[o]n timely motion" to "permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Consistent with this rule, the D.C. Circuit has identified four requirements to intervene as of right: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (citation omitted).

### B. Permissive Intervention

Federal Rule of Civil Procedure 24(b) authorizes permissive intervention for a party who files a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion to permit intervention under Rule 24(b), "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## III. DISCUSSION

Before the Court are motions to intervene by two sets of groups: KMI and the State Intervenors. The Court will address each group in turn.[3]

### A. Defendant-Intervenor KMI

KMI asks to intervene as of right under Rule 24(a) in this action or, in the alternative, to permissively intervene under Rule 24(b). Plaintiffs oppose KMI's motion to intervene as of right but do not oppose KMI's motion to permissively intervene.

#### 1. Intervention as of Right

While Plaintiffs oppose KMI's motion to intervene as of right, Plaintiffs do not contest that KMI satisfies the first, second, and third prongs of intervention as of right. Ala. Riv. Opp'n at 2 ("Plaintiffs only dispute the last element—the adequacy of representation."); CBD Opp'n at 2. The Court agrees that resolution of the first three elements is straightforward.

*First*, KMI's motion to intervene is timely. "Courts routinely find that a motion to intervene is timely if it is submitted before the parties have filed their answers and before the court issues any rulings on dispositive motions." *Natural Resources Defense Council, Inc. v. Burgum*, No. 26-cv-1116, 2026 WL 2031653, at *2 (D.D.C. 2026) (RC) (collecting cases). Here, KMI

---

[3] Though Plaintiffs do not contest this point, the Court also confirms Movant-Intervenors' standing. The D.C. Circuit recently reiterated that "Article III standing is a prerequisite to intervention." *IGas Holdings, Inc. v. EPA*, 146 F.4th 1126, 1135 n.2 (D.C. Cir. 2025); *but see Institutional S'holder Servs., Inc. v. SEC*, 142 F.4th 757, 764 n.3 (D.C. Cir. 2025) (recognizing that requiring intervenors to show standing when seeking the same relief as an existing party is "in tension" with the Supreme Court's decision in *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020)); *see Little Sisters of the Poor*, 591 U.S. at 674 n.6 (stating that the appellate court "erred by inquiring into [the intervenor's] independent Article III standing" where the intervenor sought the same relief as the defendant-appellant).

Here, KMI consists of energy companies who are pursuing projects under Nationwide Permit 12, and the Intervenor States consist of states who "have a direct pecuniary interest in continued oil and gas development" pursuant to Nationwide Permit 12. Intervenor States Mot. at 6; *see Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) ("[E]conomic harm" is "an injury-in-fact for standing purposes."). This economic injury is traceable to Plaintiffs' Complaints because, absent the filing of these lawsuits, KMI and the Intervenor States would remain able to benefit from Nationwide Permit 12. In turn, redressability is met, as KMI and the Intervenor States can prevent the injury by defeating Plaintiffs' challenges. *See IGas Holdings*, 146 F.4th at 1135 n.2.

submitted its motion on the Defendants' deadline for answering the Complaint and filed its own proposed Answers "to ensure the Court's proceedings are not delayed." KMI Mot. at 5. The Court has not issued any rulings on any dispositive motions.

*Second*, KMI has demonstrated an "interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). Here, KMI has a clear interest in the action, given that the Corps authorized Kinder Morgan's subsidiary Tennessee Gas to construct the Mississippi Crossing Pipeline Project under Nationwide Permit 12; Southern Natural and Elba have requested verification from the Corps to rely on Nationwide Permit 12 to construct the South System Expansion IV Pipeline Project; and Kinder Morgan otherwise relies on Nationwide Permit 12 as a regular part of its business. KMI Mot. at 6–7.

*Third*, KMI is "so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect [its] interest." Fed. R. Civ. P. 24(a)(2). Here, Plaintiffs' requested relief, if granted, would result in the vacatur of the Corps' reissuance of Nationwide Permit 12, which, as discussed, KMI relies upon for its pipeline projects. KMI Mot. 6–7. KMI would then "be required to obtain an individual permit from" the Corps, which could pose "serious financial, operational, and safety threats to KMI's business and infrastructure." *Id.*

a. *Adequacy of Representation*

Accordingly, KMI's motion to intervene turns on the fourth element of intervention as of right: whether "existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The parties dispute whether KMI's interests are adequately represented by the current trade association intervenors: American Gas Association, American Petroleum Institute, Interstate Natural Gas Association of America, and Liquid Energy Pipeline Association (the "NWP 12 Coalition"). After

examining the relevant case law, the Court concludes that KMI's interests are adequately represented by the NWP 12 Coalition.

i. *Legal Overview: Adequacy of Representation*

Intervention under Rule 24(a) requires the applicant for intervention to show that "no party to the action can be an adequate representative of the applicant's interests." *Karsner*, 532 F.3d at 885. The requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972). As the D.C. Circuit has explained, "[a]dequacy of representation must be assessed in relation to the specific purpose that intervention will serve." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980).

For example, in *Dimond v. District of Columbia*, a case challenging the District of Columbia's no-fault insurance law, the D.C. Circuit held that State Farm could not be adequately represented by the District of Columbia government. 792 F.2d 179 (D.C. Cir. 1986). The D.C. Circuit explained that while a "government entity such as the District of Columbia is charged by law with representing the public interest of its citizens," State Farm "is seeking to protect a more narrow and parochial financial interest not shared by the citizens of the District of Columbia." *Id.* at 192 (quotation marks omitted). Moreover, the D.C. Circuit emphasized that "this is not a case where, despite the difference in the interests of State Farm and the District, the District's representation of the general public interest would nonetheless lead the District to make the same legal arguments that State Farm would make," given State Farm's interests in a particular section of the law. *Id.* As the D.C. Circuit later explained, "[w]e have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003) (collecting cases).

In contrast to cases considering whether the *government* adequately represents the interests of private parties, several decisions within this Circuit provide useful context for the Court's analysis when comparing whether a trade association adequately represents the interests of another private party. For example, in *Center for Food Safety v. U.S. EPA*, several non-profits challenged the EPA's decisions to renew registrations for two herbicides. No. 23-cv-1633, 2024 WL 1299338 (D.D.C. 2024) (CKK). Two parties then sought to intervene as defendants: (1) Corteva, a company that owned the registrations; and (2) CropLife, a trade association representing companies that develop and sell pesticide products, including Corteva. *Id.* at *2, *7–9. The court explained that since Corteva was a member of CropLife, CropLife's interest in the dispute "hinges on and overlaps with Corteva's protectable interest." *Id.* at *7–9. Because of this "perfect overlap," the court granted intervention as of right for Corteva, but denied it for CropLife. *Id.*

Similarly, in *Earthworks v. U.S. Department of Interior*, environmental groups challenged two federal rules "regarding mining claims and mining sites." No. 09-cv-1972, 2010 WL 3063139, at *1 (D.D.C. 2010) (HHK). The National Mining Association, as well as several large mining companies, sought and were granted intervention as of right to defend the rules. *Id.* Then, two additional mining associations sought to intervene as defendants as well. *Id.* The associations argued that "unlike the [existing] Intervenors, which are or which represent large mining companies," the associations represented "individuals and small companies that focus on prospecting and exploration rather than the operation of mines." *Id.* at *1–2. The court denied intervention as of right, stating that the associations had "not explained" how the "size of their members companies or those companies' participation in a preliminary stage of mining operations renders their interests in regard to the agency rules at issue in this case distinguishable from those of large mining companies." *Id.* at *2.

ii. *The NWP 12 Coalition is an adequate representative for KMI's interests.*

Here, Plaintiffs argue that KMI's "interests are adequately represented by existing parties—their own industry trade associations." Ala. Riv. Opp'n at 5; CBD Opp'n at 4. Plaintiffs argue that "as in *Earthworks*, the Proposed Intervenors 'have not explained how the size of their' companies or their involvement with specific pipeline projects 'renders their interests in regard to the single agency rulemaking at issue in this case'—the 2026 reissuance of Nationwide Permit 12—'distinguishable from those of the large' trade associations." Ala. Riv. Opp'n at 5 (quoting *Earthworks*, 2010 WL 3063139, at *2) (internal alterations omitted). Moreover, Plaintiffs emphasize that "the Proposed Intervenors' interests in this case are even more aligned with existing intervenors than" in *Earthworks*, given that, here, "Proposed Intervenors are members of the very associations that have already intervened," whereas in *Earthworks*, "the existing mining company intervenors were not members of the associations seeking intervention." *Id.* at 7 n.3.

The Court agrees. Plaintiffs bring a wholesale challenge to Nationwide Permit 12, "requesting vacatur of Nationwide Permit 12 as a whole," and claiming that the Corps' 2026 reissuance of Nationwide Permit 12 "was arbitrary, capricious, and not in accordance with law, in violation of the Clean Water Act, Endangered Species Act, National Environmental Policy Act, and Administrative Procedure Act." Ala. Riv. Compl. ¶ 1; *see* CBD Compl. ¶ 60. Given Plaintiffs' broad challenges against Nationwide Permit 12, KMI's interest in upholding Nationwide Permit 12 overlaps with that of the industry intervenors, who were granted intervention to represent the interests of their members, which include KMI. *See* Motion to Intervene by NWP 12 Coalition, Dkt. No. 13, Case No. 26-2571, at 7 (Interstate Natural Gas

Association of America explaining how its "members regularly rely on NWPs, including NWP 12, to streamline permitting" for their projects).

The affidavits submitted in support of the NWP 12 Coalition's motion to intervene, earlier in these cases, further illustrate the adequacy of the trade associations' existing representation of KMI. For example, the affidavit submitted by American Gas Association details the harm that various (anonymous) *individual* member companies would suffer if Nationwide Permit 12 were vacated. *See, e.g.*, Parr Affidavit, Dkt. No. 13-1, at 10–11 ("[O]ne [American Gas Association] member reports that it often needs to use NWP 12 for natural gas transmission pipeline projects"); *see also* Rorick Affidavit, Dkt. No. 13-2, at 4 (noting that "[s]everal [American Petroleum Institute] members plan to continue to rely on NWP 12 authorizations for the specific water crossings involved for current and future pipeline projects"); Dreskin Affidavit, Dkt. No. 13-3, at 9 ("One member of [the Interstate Natural Gas Association of America] estimates that if an individual permit is required, instead of NWP 12, the project permitting schedule would be extended by approximately three to ten times.").

KMI's arguments that its interests are not adequately represented by the NWP 12 Coalition are unavailing. *First*, KMI argues that the "generalized, industry-wide interests of the NWP 12 Coalition" do not "adequately represent KMI's specific interests" because "Plaintiffs' own Complaints single out specific KMI projects." KMI Mot. at 8, 9 (citing Ala. Riv. Compl. and CBD Compl.) (emphasis removed). In support, KMI points to several instances where Plaintiffs' Complaints list KMI's two pipeline projects—the Mississippi Crossing project and the South System Expansion IV pipeline—by name. *See id.* KMI argues that "[h]aving singled out those projects . . . Plaintiffs cannot plausibly contend that KMI is required to yield its defense of its

interests to an association with other stakeholders and a less direct, more diffuse, and more generalized interest in the subject matter." KMI Reply at 3.

While KMI is correct that Plaintiffs' complaints reference KMI's pipelines by name, a closer examination of these references illustrates that Plaintiffs use KMI's projects as *examples* of pipelines that are planning to proceed under Nationwide Permit 12. For example, Plaintiffs state:

> Pipeline developers are already using or planning to use Nationwide Permit 12 to authorize waterbody crossings across the country. *For example*, developers in the Southeast have announced plans to use Nationwide Permit 12 to cross more than 2,200 waterbodies . . . to construct the interconnected South System Expansion 4 and Mississippi Crossing pipelines.

Ala. Riv. Compl. ¶ 10 (emphasis added). In another characteristic paragraph, Plaintiffs state that "[i]f Nationwide Permit 12 were vacated, pipelines *like* South System Expansion 4 and Mississippi Crossing could still be built under individual Clean Water Act permits." *Id.* ¶ 12 (emphasis added); *see also* CBD Compl. ¶¶ 33, 34 (listing the two KMI pipelines as "examples"); *id.* ¶ 37, 40, 42, 44, 47 (listing many other pipelines as "examples" of pipelines that plan to proceed under Nationwide Permit 12).

KMI fails to explain how Plaintiffs' use of its projects as *examples* of pipelines that plan to proceed under Nationwide Permit 12 render the NWP 12 Coalition an inadequate representative for its interests. On the contrary, the NWP 12 Coalition was permitted to intervene in this case precisely because of members like KMI. As discussed, in the NWP 12 Coalition's Motion to Intervene, each association within the NWP 12 Coalition explained the harm its members would suffer if forced to obtain individual permits for their projects, rather than general permits. Accordingly, KMI's interest "overlaps with [the NWP 12 Coalition's] protectible interest"—similar to *Center for Food Safety*, where the court concluded that the interests of Corteva, a

pesticide company, overlapped with the interests of CropLife, a trade association representing a group of pesticide companies that included Corteva. 2024 WL 1299338, at *7–9.[4]

*Second*, KMI argues that the "NWP 12 Coalition may not be capable of, or as interested as KMI in, addressing potential issues specific to projects governed by the Natural Gas Act," and that it "may possess Company-specific defenses, such as that [the Mississippi Crossing and the South System Expansion IV pipelines] underwent the very Endangered Species Act consultations Plaintiffs erroneously complain should have occurred with respect to NWP 12." KMI Mot. at 9. However, these claims "lie outside the scope of this litigation and are unnecessary to address the claims presented by Plaintiff[s]." *Center for Food Safety*, 2024 WL 1299338, at *10. Plaintiffs "have not brought any claims under the Natural Gas Act, nor have they challenged the sufficiency of any project-level ESA consultation or approval." Ala. Riv. Opp'n at 8; *see Dimond*, 792 F.2d at 192 (noting that whether the parties would "make the same legal arguments" is a factor bearing on adequate representation).

*Finally*, KMI argues that the "NWP 12 Coalition [cannot] speak to the specific harms that would be suffered by KMI in the event NWP 12 were vacated." KMI Mot. at 9. However, as discussed, the NWP 12 Coalition's Motion to Intervene *did* speak to the harms suffered by its members, and KMI can continue to voice its concerns as members of associations in the NWP 12

[4] In *Center for Food Safety*, the court denied intervention as of right for the trade association (CropLife) *at the same time* as it granted intervention as of right for the member (Corteva). Here, however, KMI appears to argue that the Court should employ a different rule for the chronology where, as here, the trade association (here, the NWP 12 Coalition) intervenes *first*, and the member (here, KMI) intervenes *later*. To illustrate, KMI argues that "participation by a *group* with a *derivative* interest in a case's subject matter cannot justify exclusion of a directly interested entity, even if the presence of that entity might have justified exclusion of the group." KMI Reply at 4 (emphasis in original). Accordingly, KMI implies that had KMI and the NWP 12 Coalition moved to intervene *simultaneously*, the Court could have denied the NWP 12 Coalition intervention, but now that the NWP 12 Coalition moved *first*, the Court cannot. However, the Court need not resolve KMI's more categorical argument here—which would appear to encourage trade associations to *always* move to intervene before their members do—given that KMI has not identified interests that the NWP 12 Coalition cannot adequately represent.

Coalition, as several members of the trade associations (potentially including KMI, given that the members were anonymous, as discussed *supra*) have already done.

In sum, the Court agrees with Plaintiffs that KMI has not explained how its interests with regard to the agency rule at issue in this case are distinguishable from those of the large energy trade associations that comprise the NWP 12 Coalition, of which KMI is a member.

2. Permissive Intervention

Parties seeking permissive intervention must file a timely motion and show they have a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Plaintiffs do not dispute that KMI has made this showing. The Court concludes that KMI has a "defense that shares with the main action a common question of law or fact," given KMI's interest in keeping Nationwide Permit 12 in place. *Id.* Furthermore, as discussed, KMI's motion was timely. Accordingly, the Court shall **GRANT** permissive intervention to KMI.

3. Conditions on Intervention

Because "permissive intervention is an inherently discretionary enterprise," *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998), a court "enjoys considerable discretion under Rule 24(b)," *Env't Def. v. Leavitt*, 329 F. Supp. 2d 55, 66 (D.D.C. 2004) (RMU). In *Earthworks*, for example, after denying intervention as of right to the mining associations, the court granted permissive intervention to the mining associations but required them to "submit joint motions and memoranda with the existing Intervenors," in order to "prevent excessive briefing" in the case. *Earthworks*, 2010 WL 3063139, at *1, 2. Plaintiffs here recommend the Court limit "all industry-affiliated Defendants-Intervenors—which again, are largely the same companies

connected through trade groups or subsidiaries—to a single brief or a combined briefing page limit." Ala. Riv. Opp'n at 2; *see also* CBD Opp'n at 4-5.

The Court agrees with Plaintiffs and will employ similar restrictions as in *Earthworks*. Accordingly, the Court hereby **ORDERS** that KMI must **CONFER** with counsel for the NWP 12 Coalition and file joint motions and memoranda with the NWP 12 Coalition in the course of briefing this case. The existing conditions on the NWP 12 Coalition's participation in this case, set out at Dkt. No. 15, Case No. 26-2571, shall remain the same.

**B. State Intervenors**

The Court now turns to the Intervenor States' motion to intervene as of right. Plaintiffs do not oppose intervention as of right, though Plaintiffs condition their non-opposition on the Intervenor States following the conditions the Court imposed on the NWP 12 Coalition's intervention.

For the following reasons, the Court shall **GRANT** the Intervenor States' motions to intervene as of right but shall **CONDITION** the intervention on the Intervenor States adhering to the same requirements as the NWP 12 Coalition.

1. Intervention as of Right

The Court agrees with the Intervenor States that they satisfy the requirements of intervention as of right. *First*, the Intervenor States' motion is timely. The states moved "for intervention only three months after the suit was filed" and several weeks before the administrative record is due. Intervenor States' Mot. at 5. The Court concludes that no party will be prejudiced by the Intervenor States' intervention. *See Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) ("The most important consideration in deciding whether a motion for intervention is [timely] is

whether the delay in moving for intervention will prejudice the existing parties to the case.") (citation omitted).

*Second*, the States have a protectible interest in the case. The States represent that they are "producers and consumers of oil and gas" and, accordingly, "have an economic interest in minimizing transportation costs by transporting oil and natural gas through pipelines." Intervenor States' Mot. at 5. The States further explain that they benefit from royalties on the production of oil and gas, as well as revenue sharing from oil and gas development on federal lands. *Id.* at 6–8; *see Fund for Animals*, 322 F.3d at 733–737 (holding that Mongolia had right to intervene to defend non-regulation of hunting trophies where regulation would decrease Mongolia's revenue).

*Third*, the States' interests will be impaired if Plaintiffs are granted their requested relief. *See* Intervenor States' Mot. at 9 (arguing that, if Nationwide Permit 12 is vacated, "Intervenor States would quickly be bombarded with requests for [Clean Water Act] certifications; pipeline construction and maintenance would slow to a crawl; development of new oil and gas resources (and the attendant royalties) would plummet; and the safety and reliability of the pipeline system would increasingly erode."); *see also Guardians v. U.S. Bureau of Land Mgmt.*, No. 12–0708, 2012 WL 12870488, at *1–2 (D.D.C. 2012) (ABJ) (permitting Wyoming to intervene in a challenge to federal regulations because "Wyoming has an interest in regulating coal development activities within its borders and controlling the effect of those activities" as well as "an economic interest in the development of coal mining operations in the state").

*Finally*, the States' interests are not adequately represented in this case by the existing Defendants. Starting with the federal defendants, as the States argue, "[w]hile the Federal Defendants' duty runs to the interests of the American people as a whole, the state-intervenors will primarily consider the interests of their own citizens." Intervenor States' Mot. at 9–10 (quoting

*WildEarth Guardians v. Jewell*, 320 F.R.D. 1, 5 (D.D.C. 2017) (RC)). Furthermore, the States explain that while the "oil and gas industry . . . relies heavily on [Nationwide Permit 12] to construct and maintain pipelines," the States' interest is in the "significant adverse economic impacts to Intervenor States" if Nationwide Permit 12 is vacated. Intervenor States' Mot. at 5–6. Nor do Plaintiffs argue that any existing parties would adequately represent the Intervenor States' interests. Accordingly, the Court concludes that the existing parties' representation of the Intervenor States "'may be' inadequate." *Trbovich*, 404 U.S. at 538 n.10.

2. Conditions on Intervention

"Even where the Court concludes that intervention as a matter of right is appropriate, its inquiry is not necessarily at an end: district courts may impose appropriate conditions or restrictions upon the intervenor's participation in the action." *Forest Cty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 15 (D.D.C. 2016) (CKK) (citing *Fund for Animals*, 322 F.3d at 737 n.11) (additional citations omitted). "[A]ny conditions imposed should be designed to ensure the fair, efficacious, and prompt resolution of the litigation." *Id.*

Here, Plaintiffs' conditioned their non-opposition to the States' intervention on the States "adher[ing] to the same 'conference' requirement that the Court imposed on the NWP 12 Coalition," in order to avoid duplicative briefing. Supplemental Statement in Support of Intervention, Dkt. No. 32, Case No. 26-2571. In order to ensure the fair and efficacious resolution of this action, the Court shall require the Intervenor States to comply with the following conditions:

- The Intervenor States shall comply with all existing scheduling orders and other orders previously entered in these cases unless otherwise ordered by the Court.
- Counsel for the Intervenor States must CONFER with counsel for Defendants and Defendant-Intervenors before filing any motion, responsive filing, or brief to

determine whether their positions may be set forth in a consolidated manner. Any separate filings from the Intervenor States must include a Certificate of Compliance with the conference requirement and a statement that the issues raised by Intervenors are not adequately covered by Defendants or Defendant-Intervenors.

- The Intervenor States may not assert counterclaims or otherwise expand the scope of these cases without first obtaining leave of the Court.

## IV. CONCLUSION

For the foregoing reasons, the Court shall Court shall **DENY** KMI's motion to intervene as of right, but shall **GRANT** KMI's motion to permissively intervene, subject to conditions. The Court shall **GRANT** the Intervenor States' motion to intervene as of right, also subject to conditions. An appropriate Order accompanies this Memorandum Opinion.

**Dated:** November 12, 2026

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge